Okay, the next case is number 2010-7100. Read against the Secretary of Veterans Affairs, Ms. Hines. Thank you, Your Honor. May it please the Court. The issue on appeal is the interpretation of 38 U.S.C. section 1159. That statute provides for protection of service connection. The Veterans Court erred when it held that the Board did not err because it did not sever the protective rating. Section 1159 does not address ratings. Instead, it addresses the protection of service connection, an entirely separate statutory provision. 38 U.S.C. section 110 addresses the preservation of disability ratings. That's after 20, right? That's correct, Your Honor. In addition, the Veterans Court erred in its interpretation of section 1159 by not properly considering what service connection is for. The statute says there's service connection for any disability. What is the disability that it entitles the veteran to service connection? The Secretary argues that Mr. Read has a thigh disability, and that is incorrect. In fact, that is inconsistent with the VA regulations in a number of places. Now, the VA is charged with identifying and rating disabilities for purposes of compensation, and the VA has set out a fairly elaborate regulatory scheme to do that. In 38 CFR section 4.55B, the regulation identifies that skeletal muscles are divided into 23 muscle groups in 5 anatomical regions. The division into 23 muscle groups suggests that each of those muscle groups are considered distinct and separate for identifying and rating disabilities. Are you telling us, is the premise of your argument that both muscle groups were injured or that it was one or the other, and depending on which one, the compensation is measured? Starting in 1995, the VA determined that Mr. Read had a disability to muscle group 13. That muscle group is the posterior thigh group. I don't think it was identified as 13 very early on. Some of the rating decisions looked to me like they were simply saying, you know, right thigh. It didn't actually name. I don't think 13 got named until pretty far in. Can you identify for us in the record the first time that there was a rating decision that recognized this as muscle group 13? I think it was in 1995. Yes, Your Honor, it was. In September of 1995, in fact, in record site A152, there is a rating decision code sheet, and the disability is identified as to muscle group 13. It is done, that identification is via the identification of the diagnostic code 5313, and diagnostic code 5313 corresponds to muscle group 13. As I understand it from the RO decision of January 13, 2007, there's an indication that that designation of code 5313 was made without medical inquiry as to specific muscle group affected by the wound in service, and was chosen based on your complaint symptoms and findings. Do you dispute that? That is a statement in the record, Your Honor. However, there is undisputed medical evidence that Mr. Reed was shot and incurred a through-and-through gunshot wound to his right thigh. The gunshot wound entered the posterior or back of his thigh and exited the front of his thigh. Mr. Reed was examined multiple times, and in four separate rating decisions, the VA determined the identification of his muscle disability as muscle group 13. Well, wasn't that simply repeating the designation that had been made in 1995, and none of that was made on the basis of any medical examination, correct? Actually, Your Honor, after every rating decision... Is that not correct, or is that correct? After every rating decision, there was an additional medical examination. There is no medical examination that specifically says muscle group 13. That is correct, but based on the medical examinations of record, the VA, which has the responsibility for identifying the disability and then rating the disability, identified the disability as to muscle group 13. What if in the decision that was made, I guess as a result of the examination in 2005, where the physician's report says muscle group, the muscle group is group 15 that is involved. What if the physician had said there is only one muscle group involved and it should be correctly reflected as muscle group 15 and not muscle group 13? Would that fall then clearly under Gifford? It might if there was no other medical evidence in the record, and there is additional medical evidence in the record that supports a conclusion that there is no absurd result here. That was the analysis in Gifford, and that Mr. Reed incurred a muscle disability to muscle group 13. That includes testimony from the veteran himself, who explained that he was shot through the thigh, that includes medical evidence from Dr. Huff, who examined Mr. Reed in 1996 and explained in his medical report that the bullet entered posterior medially and exited anterior medially. I think you'll agree with me that none of that evidence was the result of a specific medical evaluation intended to identify the muscle groups involved. I think, Your Honor, every medical examination that Mr. Reed has had has been for that purpose. He has had multiple medical examinations over the course of... He gets the exam and then a rater puts it into a diagnostic code, right? The VA then issues a rating decision and does more than just... I disagree, Your Honor, because muscle group 13 is for certain of the posterior muscles in the thigh. Muscle group 15 is for certain muscles in the inside anterior portion of the thigh. It is not absurd to suggest that because Mr. Reed had a bullet enter the posterior portion of a thigh, of his thigh, his right thigh, that he could have incurred and did in fact incur muscle damage and a muscle disability to muscle group 13. But I didn't see your arguing that this was an additional injury either that occurred with time or with the passage of time or with a misdiagnosis. The point of the appeal has been section 1159, which precludes the VA from severing. Well, it does matter. The VA was precluded from severing service connection for the disability to muscle group 13. That had been in place for 12 years before there was a rating decision that identified the disabled muscle group as muscle group 15. And the VA was not entitled to sever service connection for muscle group 13 when it issued the rating decision identifying muscle group 15. But the VA does have the liberty to correct a record that reflects a misidentification. There are situations, and the case in Gifford and the other OGC opinion referenced in the record, there are situations in which the VA has made a correction. But those are very distinct from the situation here. Does it matter whether Mr. Reed had two different muscle groups injured or only one? Or is that not up to us to sort out? We're not asking this court to make that determination. There is record evidence today that Mr. Reed suffered distinct muscle disabilities, one to muscle group 13 and one to muscle group 15. The point of the appeal is that the VA was not entitled to sever service connection for the disability to muscle group 13 because that has been in place for more than the requisite 10 years. They wouldn't be able to rate it at zero, however. That's correct. That is correct. If it had been 20 years, they wouldn't be able to rate it at zero. If the result of this case were to be that he's got two injuries, one protected by the statute, 1159, the other at muscle group 15, and then when it goes back, the VA could rate him zero on the 13th. The VA is entitled to make that change, considering the record subsequent to this appeal. The point is that he should be service connected for muscle disability to muscle group 13. Now, Your Honor asked a question about the medical evidence and the sufficiency of the medical evidence when the new rating decision was made in 2007. The medical evidence was sufficient for the board to make a finding of fact that Mr. Reed suffered a disability to muscle group 13. The medical record was also sufficient for the secretary to argue previously that there should be no remand because the record was clear enough that the veteran had a disability to muscle group 13. So there was medical evidence there that both the board and the secretary found to be sufficient. Because the statutory period had run, by the time of the remand, the VA was not entitled, because of section 1159, to sever service connection for the disability to muscle group 13. The general counsel's precedential opinions here are only entitled to skid more difference. Isn't that correct? That's correct, Your Honor. They are not binding on this court, and our position is they're not persuasive either. And nothing would preclude the secretary, presumably, from having notice and comment rulemaking on this subject if they wanted to. That's correct. There is nothing that would prevent that. But for purposes of this appeal, they're not binding on this court. And we do believe they are distinguishable. In the first instance, OGC 1392, that the secretary relies on quite heavily and says addresses the very point of this appeal is distinguishable. In that case, the veteran had arthritis, lower back arthritis. There was a change made to the diagnostic code, not because there was a change in the disability, but because there was a change in the etiology. That is, was it traumatic arthritis or degenerative arthritis? That is not the case here where there are distinct and separate muscle groups that have been disabled and that the Gifford decision is distinguishable as well. In that case, the court said that they could make an administrative change when the veteran had been service-connected for a disability to the left thigh when his actual disability was in the right thigh. That, too, is not applicable here where there is medical evidence, there are findings of fact, and the secretary has agreed that there is evidence sufficient to show a disability to muscle group 13. What do you say about the fact that the doctor in 2005 was specifically asked to determine which of the muscle groups are involved, plural, which of the muscle groups are involved in the veteran's gunshot wound residuals, and his answer is the muscle group is group 15 that is involved? That is correct, Your Honor, and there is that finding in 2005. It is interesting to note that in that medical examination, the medical examiner there did not identify the wound as a through-and-through gunshot wound and did not identify or recognize any of the record evidence that the gunshot entered Mr. Reed's thigh posteriorly or in the back and exited. He had the C file. I presume all of that is in that file. He did have the file, Your Honor, but it is interesting to note that he did not address the fact that it is a through-and-through gunshot wound that entered through the back of Mr. Reed's thigh and exited through the front of his thigh. In addition, at the time that finding was made, the 10-year statutory period had expired. Mr. Reed was entitled to service connection for his disability to muscle group 13 at that time. Thank you. Thank you.  Any other questions? Ms. Riker. May it please the Court. There has been a lot of talk about which muscle groups were involved, and I would like just to point out to the Court that in the Board's 2002 remand, it was remanded specifically so that the VA could obtain competent medical evidence as to which muscle groups were involved. The Board then made a finding of fact that it was only muscle group 15 that was involved in Mr. Reed's injury, and the Veterans Court affirmed that decision. So to the extent that the appellant is asserting that there are any facts or any sort of factual finding that there is injury to two muscle groups, that is simply incorrect and it cannot be reviewed by this Court. But on the face of the record, there is a finding, which we are not reviewing, that group 13 was injured. Then we have a later record, 10 years later, which says group 15 was injured. We're not inspecting the correctness of those findings. We're not inspecting to see if one or the other was a correct finding on the facts of the injury. Here we have these conflicting statements. We have a statute that prohibits review of the first statement, which isn't being challenged by anyone. And if the position of the VA is that a mistake was made and that there can be only one award for one muscle group, how does one correlate that with the statutory provision that after 10 years you can't challenge the correctness of the initial finding? We believe that Section 38 U.S.C. 1159 was intended to protect the service connection of a present disability. So to the extent that there is a present disability, if VA had incorrectly said that it was related to an injury or disease that was incurred in service, VA would not at this time be able to go back and change that determination. However, 1159 was not intended for a situation such as here, where VA is simply making an administrative correction to the underlying basis of the disability. And the diagnostic codes... But how do we know that? They don't say that. How do we know that there may not have been additional injury or consequences that didn't appear until after 10 years? There could have been additional consequences that appeared after 10 years. And then Mr. Reed would be entitled to a rating for those additional consequences. And that is precisely why we believe that the disability that is service-connected should be more broadly defined. Because if we define the disability as just one muscle group or diagnostic code, because we think the two are one and the same, then Mr. Reed would have to actually come in and submit a new claim and establish service connection for those additional injuries. However, if it's viewed all as one disability, then he is already service-connected and it is much easier for the veteran to establish that these other elements or damaged muscle groups that play into the injury to his right thigh are related to the gunshot wound that he incurred in service. What if a veteran is riding in a vehicle someplace and a mortar or IUD goes off and injured in his face and his arm and his leg? So what is the disability? There's one incident and one cause of all of this injury, but there are different parts of the body affected. There's the face, there's the arm, there's the leg. And presumably there would be different diagnostic codes and different ratings that would attach to each of these things. What is the disability? In that instance, or in any instance, it depends on the medical evidence. And essentially it would be up to a medical examiner to determine what disabilities have been incurred. I'm the medical examiner and I determined that there is a facial deformity, there is a broken arm, and there is muscle damage to a leg. What's the disability? All three, I presume, are disabilities. I would say in that instance those would likely be different disabilities because they present different symptoms. He would be service-connected for each of those. It's a statutory interpretation, right? Yes. So you have a statute that says service connection for any disability for death. And if you look at the regulations, there are really two parts to service connection. One is did it happen in the service or was it aggravated from previously in the service, right? Correct. That's a when did it happen element. Correct. And we know that's protected. And the legislative history suggests maybe that's all they were trying to protect. Throughout here, the malady that the veteran has had has always been described as residuals of a gunshot wound to the right thigh, straight through. So it would be residuals of an injury to the head, a residual of injury to the shoulder, residuals of the injury to the leg, if those were the three parts that judgment had referred to. That would presumably be your argument, I would think. Yes. And so along comes the government and tells Mr. Reed that gee whiz, he's been mistaken all these years. His gunshot was through and through his arm. And so it's residuals for an arm injury. They would be barred by 1159 from severing that connection. You have to agree with that. That's not a diagnostic code or anything. You weren't shot in the head after all. You were shot in the leg. And if you've been 10 years getting some amount of something for 10 years in the head, you can't sever that. Correct. And so the debate here is at what level of analysis or what level of either generality or particularity do we assign to the word disability in the statute? Correct. And now what service connection from the history that happened to you, we know what that means. In our position, it simply cannot mean a diagnostic code, because if you look at the general provisions in Part 4 of the regulations. It very honestly concedes that they're not seeking protection for a diagnostic code. The argument is that it relates to a muscle group. Correct. But that's the argument. So now we're talking about, well, there is service connection for that muscle group, muscle group 13. And now more than 10 years later, there's a medical diagnosis that there's been damage to muscle group 15. Your argument is it was service connection for residuals to an injury of muscles to the right thigh. Presumably that's not bone, it's going to be muscles. And it has been diagnosed for many years as a 13 problem. Yes. How are we supposed to know what the word disability means in the statute? The government's position is that disability is more broadly defined in a common sense manner as the effect or the functional impairment that results from an in-service injury or disease. And this comports with the VA's definition of how they've described, I'm sorry, it's supported by their holding in Gifford and their longstanding interpretation of this statute, that it's more broadly. But that's the only weight that we can assign to either the CABC decision or the general counsel's opinion as their power to persuade under schedule. Because you don't have a, you could have a notice and comment rulemaking rule here that would solve this problem in a New York county, right? Correct. But you don't have one. But more generally, we don't think that, if you look at the general provisions in part four of the regulations, it says that the same disability should not be, or the same diagnosis should not be evaluated under different diagnostic codes. And really, the diagnostic code is one and the same with the paragraph next to the diagnostic code. I mean, barring VA completely changing those numbers, essentially what they're saying. Does it make any difference here that the medical examiners that examined Mr. Reed all during those years never said you've got a 13 problem? That it was a Rader's decision who looked at the medical exam and says, which pigeonhole do we push this in? You know, we know we've got 55, what is it? We've got 13, 14, 15 home estimates. I believe that that is significant. However, I would not concede that, you know, that medical diagnoses cannot change because, in fact, they do. Everybody agrees that the diagnostic code isn't protected. Okay. We know that. Well, I also – the government also believes – I mean, I don't understand if I'm trying to get out of you. I understand. The way I understand the system works is that unless specifically asked, the doctor producing the exam is unlikely to say muscle group 13, muscle group 15. They go in and they just like this record is repeat with examination from 95 on that says that the veteran Reed has a serious injury in his thigh as a result of the gunshot wound. Right? And then that goes down from the examiner's office. It goes down the hall to the Rader's office. And the Rader reads the exam. Isn't that correct? Correct. And the Rader says, like common law pleading, where do I put this in the system? And it was put in 13 all those years. Right? You are exactly right. So essentially the Rader looks at this and says, oh, I have a service-connected disability. How can – and then the regulations instruct them to then look at all the different diagnostic codes or the descriptions next to the diagnostic codes and determine what diagnostic code best represents or would reflect the impairment and earning capacity that is – that the veteran is suffering because of this injury. Really the diagnostic codes and those descriptions in the rating schedule in Part 4 are actually for VA's internal purposes so that they know the basis of the evaluation that is being assigned. So a reassessment of a ratings decision is not a severance. Correct. It doesn't contravene 1159. Correct. In this case, the VA has always recognized that Mr. Reed is service-connected for residuals of the same gunshot wound to the thigh, and he has remained compensated for that wound or that disability stemming from the injury since 1995. Nothing has been severed, and he is receiving the full protection of 1159. So you're really saying correcting an incorrect decision is not a severance? Yes. That is precisely what I'm saying. And – But it's still hard to find anywheres where the VA said that they had made a mistake when they called it muscle group 13. Well, they say that – They said that the medical evidence did not demonstrate or say which muscle group was injured, and that's precisely why the board remanded so that there could be an exam that would be competent medical evidence as to the nature and extent of any muscle injuries from that wound. And I think it's implicit in that statement that there was no medical basis for muscle group 13. And just to point out, although this is more of a factual matter – The doctor after doctor called it muscle group 13? The rating – One after another? The rating did, not – Until the 10 years had passed, and then along comes someone else and calls it 15. And that's really, it seems to me, what underlies the entire question is whether this is the same injury. Well, if you look at the medical examinations since 1995, they have to the extent they describe the scar and the location of the scar, they have always described the scar as in the mesial anterior part of the thigh. And even Dr. Huff, Mr. Reed's own physician, described it that way as being in the anterior medial part of the thigh. And so if you're wanting to look at how the doctors have described the scar, they never described the scar as being on the posterior part of the thigh. And if you look at the diagrams that the appellant has provided in the brief, the muscles in the mesial thigh can be seen from both the posterior and the anterior view. So arguably we could say that the injury was always to muscle group 15 if we were to guess just based on the evidence in the medical record. Maybe the last doctor was wrong. But how do we know? You're telling us whatever it is, somebody made a mistake and there was only one injury and therefore only one compensation. Well, I'm saying the medical examinations were not specific enough to diagnose the specific muscle group and perhaps the rating officer in trying to pigeonhole the actual injury into some particular code on the schedule was possibly incorrect and did not correctly convert the diagnosis to the rating schedule. But I don't see that there's even any inconsistencies in the medical report saying that the diagnoses are in controversy. Well, they can't both be correct. They could. If they are both correct, then this veteran is being undercompensated. True, but as it stands now, the factual findings of this case are that there are no injury to muscle group 13. So even if this court were to remand the case on the law, although we can't say for sure, it is most likely that the veteran would be rated at zero or noncompensable rating for muscle group 13 and he would not receive any more compensation. I see that my time is about up. Ultimately, what this case is about is the appellant is asking the court to interpret the statute in a way that will enable him to get disability benefits for an injury that does not exist. This court should not do that. If the court has no further questions, we respectfully ask that you affirm the decision of the Veterans Court. Thank you, Ms. Wright. Ms. Hines. Thank you, Your Honor. With respect to rating decisions and what happens in rating decisions generally and what has happened in the rating decisions specifically in this case, the board in 2006 in its decision stated that a rating decision is the only appropriate place to identify the service-connected disability. That was what was done in four rating decisions that identified muscle group 13 as being disabled. In addition, Judge Clevenger asked questions about what the disability is and is it that the disability is residual of gunshot wound to the right thigh. The answer to that is yes, but that doesn't mean that there's one disability, and that's borne out from the rating decisions in this case. I'd point the court to... You're agreeing that the residuals of the gunshot wound to the right thigh is a disability, but it's not the only disability. Well, it doesn't specifically identify the disability, and let me explain why. If you look at the rating decision from 2002 at A246, that identifies a residual gunshot wound to the right thigh and identifies diagnostic code 5313 that identifies muscle group 13. That's in 2002. That's, you know, after there's been a rating. That's correct. In addition, immediately below, it's identified a scar as a residual of a gunshot wound to the right thigh. That is identified as corresponding to diagnostic code 7804, and that relates to scarring. So although there was a single gunshot wound and there were residuals to the right thigh, there were two separate and distinct disabilities. So it is incorrect to say, for purposes of what's currently been rated for Mr. Reed, that there is a single disability. In addition, in 2002, Mr. Reed was rated as having a neuropathy, the medial femoral cutaneous nerve right, residuals of a gunshot wound. Again, it was the residuals of the same gunshot wound that resulted in a separate and distinct rating and identification of disability. The way the earlier iterations have been evaluation of residuals in the plural, so there can be more than one residual of a gunshot wound to the right thigh. That's correct, but it's incorrect. It doesn't necessarily mean there have been two distinct disabilities. The disabilities, if you look at the diagnostic codes and the identification of diagnostic codes in the regulations, 38 CFR 4.27 indicates that the diagnostic code numbers appear opposite the rated listed disabilities. That suggests that each diagnostic code identifies a distinct disability, and that's the case with Mr. Reed, who has separate and distinct rated disabilities to muscle group 13, from scarring under diagnostic code 7804, and neuropathy, or nerve damage to his right thigh, under 8529. Separate and distinct disabilities resulting from the same injury. It highlights the incorrectness of saying that he has just a thigh disability, one disability. He has multiple disabilities arising from the same injury, and he, after 10 years, was entitled to service connection protection for the disability to muscle group 13. Thank you, Ms. Hines. Thank you, Ms. Rager. The case is taken under session.